UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| MICHAEL BRANNIGAN, ATTORNEY-IN-FACT FOR PATIENT KD, and WORLDWIDE AIRCRAFT SERVICES, INC., d/b/a/ JET ICU,<br><br>Plaintiffs,<br><br>v.<br><br>ANTHEM INSURANCE COMPANIES, INC., d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD,<br><br>Defendant. | Case No. 8:21cv000456 |

## AMENDED COMPLAINT

By way of this Complaint, and to the best of its knowledge, information and belief, formed upon a reasonable inquiry under the circumstances, Plaintiffs Michael Brannigan, Attorney-in-Fact for Patient KD and Worldwide Aircraft Services, Inc., d/b/a Jet ICU ("Jet ICU" or "Plaintiff") brings this action against Anthem Insurance Companies, Inc., d/b/a Anthem Blue Cross and Blue Shield ("Anthem" or "Defendant").

1. This is an action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations, concerning Anthem's under-reimbursement of Jet ICU for air ambulance services.

2. On November 22, 2019, patient KD, a passenger on Princess Cruise Line's "Crown Princess" arrived at the ship's medical center complaining of vomiting, abdominal pain and other symptoms. The ship's physician, after testing, diagnosed the patient with liver failure and pneumonia. The physician requested that the patient be taken to a United States hospital facility

1

via air ambulance because he judged that both the ship's clinic and the facilities on shore at Grenada inadequate to treat the patient.

3. Plaintiff Jet ICU was the on-call Jet air ambulance service for Princess Cruise Line. It received the patient at the port of Grenada and transported the patient to Broward Health Medical Center in Fort Lauderdale, Florida on November 22, 2019.

4. Plaintiff received preauthorization from Defendant Anthem for this service. (Exh. 1). Anthem concluded that the emergency service was medically necessary.

5. After Plaintiff submitted an invoice on a CMS-1500 form to Anthem, as required, for $414,597.00, Anthem paid only $25,675.40, leaving an unreimbursed amount of $388,922.60. The member continues to owe this amount.

6. In this action, Plaintiff seeks the usual and customary amount governed by Fla. Stat. § 627.513(5) for emergency services (net of the applicable copayment).

7. Alternatively, Plaintiff seeks the out-of-network out-of-area rate specified in the Anthem Blue Access Health Certificate of Coverage issued to patient KD.

## JURISDICTION

8. The Court has subject matter jurisdiction over Jet ICU's claims under 28 U.S.C. § 1331 (federal question jurisdiction).

9. The Court has personal jurisdiction over the parties because Plaintiff submits to the jurisdiction of this Court, and Anthem systematically and continuously conducts business in the State of Florida, and otherwise has minimum contacts with the State of Florida sufficient to establish personal jurisdiction over it.

10. Venue is appropriately laid in this District under 28 U.S.C. § 1391 because (a) Anthem transacts business in the Middle District of Florida; (b) Anthem conducts a substantial amount of business in the Middle District of Florida, including marketing, advertising and selling

insurance products, and insures and administers group healthcare insurance plans both inside and outside the Middle District of Florida; and (c) Plaintiff transacts business in the Middle District of Florida.

## PARTIES

11. Plaintiff Michael Brannigan is Attorney-in-Fact for Patient KD pursuant to a Power of Attorney. Mr. Brannigan is attorney and agent for Plaintiff Worldwide Aircraft Services, Inc., d/b/a Jet ICU., is an air ambulance company whose principal office is in Tampa, Florida. It was incorporated in Florida.

12. Defendant Anthem Insurance Companies, Inc., d/b/a Anthem Blue Cross and Blue Shield is a health care insurance company. Its principal office is in Indianapolis, Indiana where it was incorporated.

## FACTUAL ALLEGATIONS

13. Plaintiff provides air transport for critically ill and injured patients to medical facilities with fixed wing jet aircraft which are crewed by trained medical personnel.

14. Plaintiff must purchase or lease and periodically inspect and repair its aircraft in accordance with federal law and FAA rules and regulations; and maintain a qualified flight crew and medical staff to meet the demands of emergency air ambulance services.

15. These laws, rules, and regulations impose significant costs and expenses on Plaintiff.

16. After the patient became critically ill on board the Crown Princess, Plaintiff transported the patient to Broward Health Medical Center in Fort Lauderdale, Florida via air ambulance on November 22, 2019.

17. Defendant Anthem authorized Plaintiff to transport the patient from Grenada to Broward Health Medical Center in Fort Lauderdale, Florida via air ambulance on November 22, 2019. (Exh. 1).

18. At the time Plaintiff performed its services, Plaintiff did not have a pre-negotiated contract with Defendant. Plaintiff was out-of-network with Defendant, meaning it was not part of Defendant's network of providers.

19. Under the Certificate, air ambulance services are covered when the member is taken from a medical emergency to a hospital.

20. By paying a portion of the charges, Defendant did not contest that the air ambulance services were medically necessary, that they were covered under the Certificate, that a medical emergency existed, that the member was taken to the nearest hospital, that the hospital the member was taken was not an "acute care" facility, or that the member should have chosen an in-network provider.

21. Fla. Stat. § 627.64194 states as follows:

(2) An insurer is solely liable for payment of fees to a nonparticipating provider of covered emergency services provided to an insured in accordance with the coverage terms of the health insurance policy, and such insured is not liable for payment of fees for covered services to a nonparticipating provider of emergency services, other than applicable copayments, coinsurance, and deductibles. An insurer must provide coverage for emergency services that:

   (a) May not require prior authorization.

   (b) Must be provided regardless of whether the services are furnished by a participating provider or a nonparticipating provider.

   (c) May impose a coinsurance amount, copayment, or limitation of benefits requirement for a nonparticipating provider only if the same requirement applies to a participating provider. . . .

(4) An insurer must reimburse a nonparticipating provider of services under subsection[] 2 . . . as specified in s. 641.513(5), reduced only by insured cost share responsibilities as specified in the health insurance policy . . .

4

22. Section 641.513(5), Fla. Sta. states:

Reimbursement for services pursuant to this section by a provider who does not have a contract with the health maintenance organization shall be the lesser of:

(a) The provider's charges:

(b) The usual and customary provider charges for similar services in the community where the services were provided; or

(c) The charge mutually agreed to by the health maintenance organization and the provider within 60 days of the submittal of the claim.

23. This statute requires that out-of-network providers must be reimbursed based on the lesser of the provider's billed charges, the negotiated rate between the provider and insurer, and the provider's usual and customary charges in the provider's community where the services were provided.

24. Defendant did not negotiate a rate with Plaintiff. Therefore, there was no negotiated rate.

25. The statute provides that the usual and customary <u>provider</u> charges be reimbursed.

26. Defendant did not reimburse Plaintiff's usual and customary charges and violated Fla. Stat. § 627.64194.

27. Alternatively, Defendant breached the terms of the Certificate.

28. By way of background, the Blue Card Program and the National Accounts System, in which each Blue Cross Blue Shield ("BCBS") licensee must participate, including Defendant Anthem, was the direct result of the practice of all the BCBS licensees, under the direction of the Blue Cross Blue Shield Association ("BCBSA"), to engage in exclusive geographical market allocation.

29. Under this practice, each BCBS licensee was allocated an exclusive geographic market to offer health insurance. This practice continues today. It will not be substantially changed

by the terms of the pending settlement agreement in the Subscriber Track in *In re BCBS Antitrust Litigation* Master File 2:13-cv-20000-RDP (N.D. Ala).

30. To make this mandatory agreement work, the BCBSA created Home and Host Plans.

31. The BCBS insurer in the exclusive geographical area through which the member is enrolled is the Home Plan. In this case, it was Anthem. The BCBS insurer located in the exclusive geographical area where the service is provided is referred to as the Host Plan.

32. These restrictions insulate the Home and Host plans against competition from each other in their respective exclusive geographic market areas.

33. When out-of-network providers are outside of the Home Plan's exclusive service area, they are considered to be "out-of-area" providers. Jet ICU was an out-of-network out-of-area provider. Under the Certificate, the reimbursement methodology for such a provider was distinct from an out-of-network in-area provider.

34. Under the Certificate, Jet ICU's emergency services were rendered outside Anthem's service area. The Certificate requires that under this circumstance the claim must be priced as required by applicable state or federal law – in this case, Fla. Stat. § 627.64194. The Certificate also states that "the Maximum Allowed Amount for out of area claims may be based on billed charges."

35. Defendant Anthem failed to reimburse Jet ICU either of the amounts set forth in the Certificate, violating ERISA.

36. Jet ICU through Mr. Brannigan sent three letters appealing the under-reimbursement, attaching medical documentation, the CMS-1500 form (the bill), and trip records. Plaintiffs exhausted their administrative remedies.

37. Plaintiff Brannigan has a Power of Attorney from Patient KD, providing ERISA standing. Brannigan is attorney from Jet ICU and its agent. The Power of Attorney states, in relevant part:

> The general powers I am granting unto my attorney-in-fact are all those powers needed, desired, or which could prove beneficial, expedient, and/or useful, to enable my attorney-in-fact to lessen or eliminate my indebtedness, obligation, or financial obligation, or financial liability owed to me to Michael Brannigan through recovering reimbursement and/or receiving monies from any party from which I am owed monies and/or from I could seek to receive monies from that is in any way related to the healthcare services that have been and/or will be rendered by me by Michael Brannigan, and his employees, members, and owners(s), at any time, and includes, but is not limited to, seeking past due contractual benefits, penalties, interest, and reimbursement of legal fees, costs, and expenses that I and/or my attorney-in-fact incurred.

38. 29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or

other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

39. Defendant did not provide the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder. Defendant did not provide full and fair review to Plaintiff.

40. Under ERISA, when an insurer fails to follow the procedures set out in the Plan, as here, the claimant is deemed to have exhausted his administrative remedies.

41. Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

## COUNT I

## CLAIM AGAINST DEFENDANT ANTHEM FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA

42. Defendant Anthem is obligated to pay benefits to Plan participants and beneficiaries in accordance with the terms of the Plan's Certificate, and in accordance with ERISA. This obligation arises under ERISA.

43. Defendant Anthem violated its legal obligations under this ERISA-governed Plan when it under-reimbursed Plaintiff for emergency air ambulance services provided to Patient KD, in violation of the terms of the Certificate and in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B).

44. Plaintiff Jet ICU submitted invoices to Defendant Anthem for $$414,597.00.

45. Defendant Anthem paid $25,675.40, leaving an under-reimbursed amount of $388,922.60. Defendant reimbursed 7% of the total amount.

8

56. Plaintiff seeks unpaid benefits and statutory interest back to the date Plaintiffs' claim was originally submitted to Defendant Anthem. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against Defendant Anthem.

**WHEREFORE**, Plaintiffs demand judgment in its favor against Defendant as follows:

(a) Ordering Defendant to recalculate and issue unpaid benefits to Plaintiffs;

(b) Awarding Plaintiffs the costs and disbursements of this action, including reasonable attorneys' fees under ERISA, and costs and expenses in amounts to be determined by the Court;

(c) Awarding Plaintiffs prejudgment interest; and

(d) Granting Plaintiffs such other and further relief as is just and proper.

Dated: April 15, 2021

/s/ James L. Magazine
THE LAW OFFICES OF LUCAS & MAGAZINE
8606 Government Dr.
New Port Richey, FL 34654
727-849-5353

Robert J. Axelrod
AXELROD LLP
800 Third Avenue, Suite 2800
New York, NY 10022
(646) 448-5263
rjaxelrod@axelrodllp.com

*Attorneys for Plaintiffs Michael Brannigan, Attorney-in-Fact for Patient KD and Worldwide Aircraft Services, Inc., d/b/a Jet ICU*